UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANCESCO PLAZZA and SYLVIE NAUDE, individually and on behalf of all others similarly situated,

                    Plaintiffs,

- against -

AIRBNB, INC.,

                    Defendant.

No. 16 Civ. 1085 (VSB)

## DECLARATION OF KYLE MILLER

I, Kyle Miller, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.    I am employed by Airbnb Inc. ("Airbnb") as a product manager and maintain an office at 888 Brannan Street, 4th Floor, San Francisco, California 94103. As an Airbnb product manager, I work with, and am familiar with, the computer code that generates the platform and website pages maintained by Airbnb including, but not limited to, the parts of the code that display Airbnb's sign-up screens and consent events on both computer and mobile devices (the "Code"). I have personal knowledge of the facts stated herein, except where stated upon information and belief, and as to those matters, I believe them to be true. I submit this Declaration in support of Airbnb's Motion to Compel Arbitration in this case.

2.    Airbnb provides an online platform that connects third-parties who wish to offer their unique accommodations (called "Hosts") with third-party travelers seeking to book accommodations (called "Guests"). The platform is accessible online at http://www.airbnb.com and via mobile applications. Hosts alone are responsible for listing their accommodations on the platform, including deciding with whom, when and

on what material terms they offer or book their accommodations. Airbnb is not a party to the accommodation agreements, which are made directly between Hosts and Guests. Airbnb does not own or control the accommodations that Hosts list on the platform and Airbnb does not operate, manage or otherwise have or grant any interest in such accommodations.

3. I am familiar with Airbnb's policies and procedures for the maintenance of its Code. The Code dictates the user interface presentation and the behavior of the platform. The Code is written in a combination of HTML, CSS, JavaScript and Ruby on Rails, each of which are programming languages with which I am familiar. The Code controls the format in which Airbnb's Terms of Service ("TOS") are presented to users for their consent and is also responsible for recording the dates and times of the user's consent to the TOS in Airbnb's database. I have personally reviewed archived and live portions of the Code relating to the sign-up screens and consent events utilized by Airbnb as discussed herein.

4. Since at least 2009, no Airbnb user could list or book an accommodation via the Airbnb platform without first creating an account, which required acceptance of the then-current version of the TOS (among other agreements). Initially, users of Airbnb could sign up only with an email account. Based on the archived Code, I have rendered a wireframe image of Airbnb's sign-up screen as of July 29, 2009, which, as discussed further below, is the date on which plaintiff Sylvie Naude ("Naude") created her Airbnb account. A true and correct copy of that wireframe image is attached as Exhibit 1 (AIR00000249).

5. As shown in Exhibit 1, on July 29, 2009 the sign-up screen invited potential users to "Create a Free Account" to use the Airbnb platform. To create an account, a potential user was required to fill out certain fields by providing their first name, last name, email, and a proposed password. Below those fields, the sign-up screen displayed a statement making clear that "By clicking 'Sign Up,' you confirm that you accept the Terms of Service" adjacent to a button reading "Sign Up." The phrase "Terms of Service" was underlined and displayed in blue, denoting that it served as a hyperlink that when clicked would take the potential user to a website displaying Airbnb's TOS. Airbnb's database reflects that Naude created her account on July 29, 2009 at 6:07 P.M, which could not have been done on that date without clicking on the button labeled "Sign Up," thereby confirming that Naude "accept[ed] the Terms of Service."

6. Over time, Airbnb added the ability for potential users to create accounts using their preexisting accounts on other services, such as Facebook. Based on the archived Code, I have rendered a wireframe image of how Airbnb's sign-up screen appeared to potential users as of August 21, 2011, which, as discussed further below, is the date upon which plaintiff Francesco Plazza ("Plazza") created his initial Airbnb account. A true and correct copy of that wireframe image is attached as Exhibit 2 (AIR00000250).

7. As shown in Exhibit 2, on August 21, 2011, the sign-up screen invited potential users to create Airbnb accounts by "Connect[ing] with Facebook" or "Creat[ing] an account with your email address." That screen provides that "By clicking 'Connect with Facebook,' you confirm that you accept the Terms of Service," where the phrase "Terms of Service" was again underlined and displayed in blue, denoting that it

3

was hyperlinked to Airbnb's TOS language. Airbnb's database reflects that Plazza created his first account by clicking on the "Connect with Facebook" button on August 21, 2011 at 9:12 P.M, thereby confirming that Plazza "accept[ed] the Terms of Service."[1]

8. As discussed further below, Airbnb's database shows that Plazza created a second Airbnb account, using the name "Francis Plazza," on October 2, 2014 at 5:38 P.M., also via Facebook. Based on the archived Code, I have rendered a wireframe image of how Airbnb's sign-up screen appeared to potential users as of October 2, 2014. A true and correct copy of that wireframe image is attached as Exhibit 3 (AIR00000247).

9. As shown in Exhibit 3, on October 2, 2014, the sign-up screen invited potential users to create Airbnb accounts by "Sign[ing] up with Facebook," "Sign[ing] up with Google," or "Sign[ing] up with Email." That screen provides that "By signing up, I agree to Airbnb's Terms of Service," where the phrase "Terms of Service" was again underlined and displayed in blue, denoting that it was hyperlinked to Airbnb's TOS language. Airbnb's database reflects that Plazza created his second account by clicking the "Sign up with Facebook" button on October 2, 2014 at 5:38 P.M.[2]

10. Airbnb has periodically modified its TOS. The then-current version of the Airbnb TOS have always been publicly available on Airbnb's website—no

---

[1] Exhibit 2 also shows that had a potential user opted not to "Connect with Facebook" and instead clicked on the link allowing them to "Create an account with [their] email address," they would have been taken to a second screen that would have allowed them to fill out certain fields by providing their first name, last name, email, and a proposed password. Below those fields, the page provided that by creating an account, "you confirm that you accept the Terms of Service," where the phrase "Terms of Service" was hyperlinked to the TOS language.

[2] Exhibit 3 also shows that had a potential user opted not to "Sign up with Facebook" or "Sign up with Google" and, instead, clicked on the link allowing them to "Sign up with Email," they would have been taken to a second screen that would have allowed them to fill out certain fields by providing their first name, last name, email, and a proposed password. Below those fields, the page provided that "By signing up, I agree to Airbnb's Terms of Service," where the phrase "Terms of Service" was hyperlinked to the TOS language.

account is necessary to access it—and it is hyperlinked in the footer of every page on Airbnb's website.

11. Each version of the TOS since August 15, 2011 has contained a mandatory arbitration provision that includes a class action waiver. True and correct copies of each version of Airbnb's TOS since the inclusion of an arbitration provision are attached as Exhibits 4 (AIR00000001-20), 5 (AIR00000022-76), 6 (AIR00000077-123), 7 (AIR00000124-40) and 8 (AIR00000205-40). Specifically: Exhibit 4 represents the TOS that were effective as of August 15, 2011; Exhibit 5 represents the TOS that were effective as of May 22, 2012; Exhibit 6 represents the TOS that were effective as of April 7, 2014; Exhibit 7 represents the TOS that were effective as of June 30, 2014; and Exhibit 8 represents the TOS were effective as of July 6, 2015. Although they have recently been amended, Exhibit 8 contains the most recent version of the TOS agreed to by Plaintiffs, as described further below.

12. Each version of the TOS between 2011 and 2015 specified that "By using [Airbnb's] Site or Application, you agree to comply with and be legally bound by the terms and conditions of these Terms of Service." (*See, e.g.,* Exhibit 8 at AIR00000205.)

13. Each version of the TOS agreed to by Plaintiffs between 2011 and 2015 also included a mandatory arbitration provision that includes a class action waiver, the language of which did not change between the 2011 and 2015 versions of the TOS. The wording of the arbitration provision, under a bolded heading reading "**Dispute Resolution,**" provided in relevant part as follows:

> You and Airbnb agree that any dispute, claim or controversy arising out of
> or relating to these Terms or the breach, termination, enforcement,

interpretation or validity thereof, or to the use of the Services or use of the Site or Application (collectively, "**Disputes**") will be settled by binding arbitration . . . . You acknowledge and agree that you and Airbnb are each waiving the right to a trial by jury or to participate as a plaintiff or class member in any purported class action or representative proceeding. Further, unless both you and Airbnb otherwise agree in writing, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of any class or representative proceeding.

(*See, e.g., id.* at AIR00000237.)

14. The arbitration provision further provided that "The arbitration will be administered by the American Arbitration Association ("**AAA**") in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the "**AAA Rules**") then in effect," "The arbitrator may award declaratory or injunctive relief," and that a user prevailing in arbitration "will be entitled to an award of attorneys' fees and expenses, to the extent provided under applicable law." (*See, e.g., id.* at AIR00000237-38.)

15. Furthermore, since May 22, 2012, the TOS have included a capitalized notice at the outset, making clear that the TOS include a dispute resolution provision. The notice provides: "PLEASE READ THESE TERMS OF SERVICE CAREFULLY AS THEY CONTAIN IMPORTANT INFORMATION REGARDING YOUR LEGAL RIGHTS, REMEDIES AND OBLIGATIONS. THESE INCLUDE . . . A CLAUSE THAT GOVERNS THE JURISDICTION AND VENUE OF DISPUTES."[3] (*See, e.g., id.* at AIR00000205.)

16. As a result of my review of the code, I have confirmed that when Airbnb modified the TOS in 2012, 2014 and 2015, it presented the modified TOS in a

---

[3] The 2011 TOS contain a minor variant on this language, beginning "PLEASE READ THESE TERMS OF USE AND CAREFULLY . . . ." (Exhibit 5 at AIR00000023.)

6

scroll box to users the first time that they attempted to log in to the Airbnb platform after the modified TOS took effect. Airbnb required users to accept the modified TOS and would not allow the user to access any part of Airbnb's website or continue using the Airbnb platform until they did so. These screens are referred to at Airbnb as "consent events."

17. Based on the archived Code, I have rendered a wireframe image of the 2012 consent event, a true and correct copy of which is attached as Exhibit 9 (AIR00000149). Upon logging in on or after May 22, 2012, all Airbnb users were presented with a screen substantively the same as that shown in Exhibit 9, which contained (1) a notice informing the user of the changes to Airbnb's TOS, among other agreements; (2) a scrollable copy of the modified TOS, among other agreements; (3) a "check box" next to text stating "I agree to the terms and conditions of the updated Terms of Service," among other agreements; and (4) buttons reading "Logout" and "I Agree." An Airbnb user could not have proceeded past this screen and continued to use the Airbnb platform unless they both clicked the check box and then clicked the "I Agree" button.

18. Based on the archived code, I have rendered a wireframe image of the April 2014 consent event, a true and correct copy of which is attached as Exhibit 10 (AIR00000150). Upon logging in on or after April 30, 2014, all Airbnb users were presented with a screen substantively the same as that shown in Exhibit 10, which contained (1) a notice informing the user that the TOS, among other agreements, had been modified and providing a link to another page containing further information regarding the modifications; (2) a scrollable copy of the modified TOS, among other

7

agreements; (3) a "check box" next to text stating "I agree to the updated Terms of Service," among other agreements; and (4) buttons reading "Disagree and Log Out" and "Agree." An Airbnb user could not have proceeded past this screen and continued to use the Airbnb platform unless they both clicked the check box and then clicked the "Agree" button.

19. Based on the archived code, I have rendered a wireframe image of the July 2015 consent event, a true and correct copy of which is attached as Exhibit 11 (AIR00000248). Upon logging in on or after July 6, 2015, all Airbnb users were presented with a screen substantively the same as that shown in Exhibit 11, which contained (1) a notice informing the user that the TOS and Privacy Policy had been modified and providing a link to another page regarding the modifications; (2) a scrollable copy of the modified TOS and Privacy Policy; (3) a "check box" next to text stating "I agree to the Terms of Service and Privacy Policy;" and (4) buttons reading "Disagree" and "Agree." An Airbnb user could not have proceeded past this screen and continued to use the Airbnb platform unless they both clicked the check box and then clicked the "Agree" button.

20. For the past two years Airbnb has also provided email notifications to all users whenever the TOS have been modified. In addition to alerting users that the TOS have been modified and when those modifications will take effect, these emails included links to both the pre- and post-modification versions of the TOS and to websites Airbnb hosted to explain the modifications. Attached as Exhibits 12 (AIR00000144-45) and 13 (AIR00000146-47) are true and correct copies of documents showing the substance of the emails Plaintiffs received regarding the 2014 TOS modifications, and

8

attached as Exhibits 14 (AIR00000241-42), 15 (AIR00000243-44) and 16 (AIR00000245-46) are true and correct copies of documents showing the substance of the emails Plaintiffs received regarding the 2015 TOS modifications.

21. Airbnb's database has always captured the time and date associated with a user's initial consent to the TOS and subsequent consent to modified versions of the TOS. The 2012 version of the TOS is referred to in Airbnb's database as "Version 2" and all earlier versions of the TOS are referred to as "Pre-TOS." The 2014 versions of the TOS are referred to in Airbnb's database as Version 3, the 2015 version of the TOS is referred to as Version 4, and the 2016 version of the TOS, which recently took effect, is referred to as Version 5.

22. I have queried Airbnb's database and obtained and reviewed Airbnb's records for Plaintiffs' accounts. True and correct copies of the TOS consent histories and transaction histories for Plaintiffs' accounts are attached as Exhibits 17 (AIR00000151-204), 18 (AIR00000252) and 19 (AIR00000251).

23. Exhibits 17, 18 and 19 show that Naude (Account Number 28477) first accepted the TOS on July 29, 2009, and agreed to subsequent versions of the TOS on May 23, 2012; May 7, 2014; and August 16, 2015. As discussed above, each of those subsequent versions of the TOS contained a binding arbitration provision that included a class action waiver.

24. Exhibits 17, 18 and 19 show that Plazza had two different accounts with Airbnb. With respect to his account under the name "Francesco Plazza" (Account Number 1001466), he first agreed to the TOS on August 21, 2011, and subsequently

9

agreed to versions of the TOS on May 22, 2012; May 30, 2014; and November 22, 2015.[4] With respect to his account under the name "Francis Plazza" (Account Number 22051787), he first agreed to the TOS on October 2, 2014 and subsequently agreed to an amended version of the TOS on August 6, 2015. As discussed above, each version of the TOS that Plazza agreed to contained a binding arbitration provision that included a class action waiver.

25. Exhibit 17 shows that Plazza earned over $50,000 as a Host in 23 transactions conducted via the Airbnb platform, most recently hosting a Guest in April 2015. (*See id.* at AIR00000165-66.) Naude earned over $420,000 as a Host in 173 transactions conducted via the Airbnb platform, most recently hosting a Guest in June 2014. (*See id.* at AIR00000175-80.)

26. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 22, 2016.

_____
Kyle Miller

---

[4] Early iterations of Airbnb's reservation system required new Hosts to re-confirm their acceptance of the existing TOS when they contacted or accepted bookings from guests. Exhibit 17 thus also shows that on August 19 and 26, 2009, Naude confirmed her acceptance of the same version of the TOS that she had previously accepted when she created her account on July 29, 2009. Similarly, it shows that on September 3 and December 20, 2011, Plazza confirmed his acceptance of the same version of the TOS that he had previously accepted when he created his account on August 21, 2011.